UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION
Case No. _____

PAUL STEVENS
    *Plaintiff,*

      v.   **COMPLAINT**

ARCH WOOD PROTECTION, INC.;   Plaintiff Demands
OSMOSE INC.;   Trial by Jury
CHEMICAL SPECIALTIES, INC.;
KOPPERS, INC.;
LANGDALE FOREST PRODUCTS COMPANY; and
T.R. MILLER MILL COMPANY, INC.
    *Defendants*.

\*\*\* \*\*\* \*\*\* \*\*\*

Comes now the Plaintiff, Paul Stevens, and for his causes of action against the Defendants, Arch Wood Protection, Inc.; Osmose, Inc.; Chemical Specialties, Inc.; Koppers, Inc.; Langdale Forest Products Company; and T.R. Miller Company, Inc., with his Complaint, and respectfully states the following in support of causes of action against the Defendants:

1. The Plaintiff, Paul Stevens, resides at 2521 W. Euclid Avenue, Ashland, Boyd County, Kentucky 41102.

2. The following companies manufactured the arsenic-based pesticide known as Chromated Copper Arsenate ("CCA"), which is used as a preservative to treat the utility poles and cross-arms:

  a. The Defendant Arch Wood Protection, Inc. ("Arch") which is headquartered at 5660 New Northside Dr., Suite 1100, Atlanta, Georgia 30328.

  b. The Defendant Osmose Inc. ("Osmose") which is headquartered at 980 Ellicott Street, Buffalo, New York 14209.

  c. The Defendant Chemical Specialties, Inc. ("CSI") which is headquartered at 5910 Pharr Mill, Road Harrisburg, North Carolina 28075.

3. During the time period of approximately 1985 to 2010, the following wood treating companies purchased the CCA preservative from Arch, Osmose and/or CSI to treat utility poles and cross-arms, which were sold to the employer of Paul Stevens, Kentucky Power Company ("Kentucky Power") in Ashland, Kentucky:

  a. The Defendant Koppers, Inc. ("Koppers") which is headquartered at 436 Seventh Avenue, Pittsburgh, Pennsylvania 15219.

  b. The Defendant Langdale Forest Products Company ("Langdale") which is headquartered at 1202 Madison Highway, P.O. Box 1088, Valdosta, Georgia 31603.

  c. The Defendant T.R. Miller Mill Company, Inc. ("T.R. Miller") which is headquartered at P.O.Box 708, Brewton, Alabama 36427.

4. The arsenic used to treat the CCA treated poles and cross-arms is toxic and a biocide. The arsenic is also oncogenic and a proven human carcinogen. The chromium is toxic and a sensitizer. The copper can enhance the toxic effects of arsenic.

5. The Plaintiff, Paul Stevens, was poisoned by exposure to chromium, copper, and arsenic on and in CCA treated utility poles and cross-arms while employed by Kentucky Power.

6. Paul Stevens worked for Kentucky Power on the line crew as a pole climber and a supervisor from 1981 to May, 19, 2011, when illness forced him to take leave from work.

7. Paul Stevens was exposed to arsenic, chromium, and copper on and in CCA treated wood by handling, sawing, and drilling the CCA treated wood as a part of his employment. Paul Stevens used chainsaws to saw the CCA treated wood. Paul Stevens used electric, gas-powered, and pneumatic drills to drill the CCA treated wood. In addition, Paul Stevens was exposed to arsenic, chromium, and copper as a result of fighting and extinguishing fires on CCA treated utility poles as part of his employment.

8. On November 30, 2011, Mr. Stevens was diagnosed with systemic adverse health effects consistent with exposure to arsenic from the CCA treated wood.

9. Paul Stevens has malignant melanoma which medical authorities in case studies have associated with exposure to arsenic.

10. The chemical manufacturer Defendants, Arch, Osmose and CSI, sold the arsenic-based pesticide to the wood treating Defendants, Koppers, Langdale and T.R. Miller, which treated the utility poles and cross-arms with the CCA preservative. The wood treating Defendants then sold the CCA treated utility poles and cross-arms to Kentucky Power.

11. The chemical manufacturer Defendants, Arch, Osmose and CSI, control the design treatment and marketing of CCA treated utility poles by:

    a. Implementing and enforcing industry standards of the American Wood Preservers Association ("AWPA") and providing technical assistance to the wood treating Defendants, Koppers, Langdale and T.R. Miller.

    b. Preparing Material Safety Data Sheets for CCA treated utility poles.

    c. Marketing the sale of CCA treated utility poles with their respective "brand name" and/or trademarked CCA preservative.

    d. Providing warranties for CCA treated utility poles and cross-arms to the consumer.

    e. Enforcing regulatory standards and reserving the right to

4

terminate the sale of the CCA preservative to a wood treater if it fails to comply with the standards designed to ensure proper treatment.

12. Each of the Defendants, at all times relevant to Plaintiff's claims, knew, or should have known, that warnings were necessary to protect the Plaintiff, Paul Stevens, from the known hazards of exposure to arsenic, chromium, and copper in the CCA preservative used to treat the utility poles and cross-arms.

13. Each of the Defendants, at all times relevant to Plaintiff's claims, knew, or should have known, that CCA treated utility poles burn for long periods of time due to a phenomena referred to as "afterglow."

14. The Defendants, at all times relevant to Plaintiff's claims, knew, or should have known, that warnings were necessary to protect Paul Stevens from the hazards of exposure to arsenic, chromium, and copper in the CCA preservative used to treat the poles and cross-arms, which is released by handling, sawing, drilling and burning.

15. Each of the Defendants, at all times relevant to Plaintiff's claims, knew, or should have known, that permanent warnings of the hazards of exposure to arsenic must and could be easily affixed to the CCA treated utility poles and cross-arms.

16. Each of the Defendants negligently, willfully, and with reckless disregard for the health and safety of the Plaintiff, Paul Stevens, failed to affix

permanent warnings on the CCA treated utility poles and cross- arms that described the nature and extent of the known hazards of exposure to arsenic which the Defendants knew, or should have known, was toxic and carcinogenic.

17. There were no warnings on the CCA treated utility poles or cross-arms which described the nature and extent of the health hazards caused by exposure to arsenic, chromium, and copper resulting from sawing, drilling, handling, and the burning of the CCA treated utility poles.

18. The purpose of arsenic in the CCA treated utility poles and cross-arms is to kill termites and microorganisms.

19. When the CCA treated utility poles were delivered to Kentucky Power, the poles were wet, which made the poles easier to climb and drill. Each of the Defendants knew that warnings were necessary for the hazards of exposure to arsenic in which the fixation of the arsenic on and in the wood had not taken place.

20. Each of the Defendants knew, or should have known, a warning label is and was necessary to inform users of CCA treated utility poles that arsenic is both on and in the CCA treated utility poles and cross-arms.

21. The failure of each of the Defendants to put a permanent warning label on the CCA treated utility poles, including the universal symbol of a "Skull and Crossbones" with the words "DANGER" and "POISON," knowing utility

workers were at risk, is and was a direct and proximate cause of the toxic effects caused by Paul Stevens exposure to arsenic, chromium, and copper on and in the CCA treated wood.

## COUNT I

## PRODUCTS LIABILITY

22. Plaintiff incorporates each and every allegation contained in Paragraphs "1" through "21," including the subparts, by reference.

23. The wood treating Defendants, Koppers, Langdale and T.R. Miller, purchased the CCA preservative that they used to treat the CCA treated utility poles and cross-arms from the chemical manufacturer Defendants, Arch, Osmose and/or CSI.

24. The CCA treated utility poles and cross-arms were defective and unreasonably dangerous in the following manner:

   a. Each of the Defendants failed to permanently label the CCA treated utility poles and cross-arms to give reasonable warnings about the nature and extent of the hazards of exposure to CCA on and in the CCA treated utility poles and cross-arms; or

   b. Each of the Defendants failed to give reasonably complete instructions on the proper use of the product; and

   c. Each of the Defendants could have made such permanent

7

warning labels or instructions available to Plaintiff, Paul Stevens, because the Defendants knew or should have known the nature and extent of the hazards presented by arsenic, chromium, and copper on and in the CCA treated utility poles and cross-arms.

25. As a direct and proximate result of Defendants' defective and unreasonably dangerous product, Paul Stevens was poisoned by the arsenic, chromium and copper on and in CCA utility poles and cross-arms by using, handling, sawing and drilling the CCA treated wood, and by extinguishing CCA treated utility pole fires.

## COUNT II

### PUNITIVE DAMAGES

26. Plaintiff incorporates each and every allegation contained in paragraphs "1" through "25," including the subparts, by reference.

27. The chemical manufacturer Defendants, Arch, Osmose and CSI, intentionally and maliciously failed to warn the wood treating Defendants, Koppers, Langdale and T.R. Miller, in 1984 or anytime thereafter that: (1) that all eight members of the Mortag family in Wisconsin were poisoned by burning CCA treated wood in their wood stove, and (2) James Sipes was poisoned as a direct result of sawing CCA treated wood to make picnic tables. Arch, Osmose and CSI failed to report the adverse health effects suffered by James Sipes to the U.S.

Environmental Protection Agency for the reason that such knowledge would have been the end of the "existence" of the manufacture and sale of CCA treated wood.

28. The chemical manufacturer Defendants, Arch, Osmose and CSI, represented that the hazards of CCA treated wood are no different that the hazards of untreated wood.

29. To conceal the hazards and to enhance sales of CCA treated utility poles and cross arms, Arch, Osmose and CSI acted in concert to prevent warning labels from being affixed to the CCA treated utility poles and cross-arms, knowing that the warning labels on CCA treated utility poles and cross arms were necessary to safeguard utility workers, including Paul Stevens, from the proven hazards of exposure to arsenic on and in the CCA treated wood.

30. The acts and omissions of the chemical manufacturer Defendants, Arch, Osmose and CSI, demonstrate a reckless and willful pattern of wanton and depraved indifference to the likelihood of harm to utility pole workers, including Paul Stevens, as a result of the known health hazards presented by exposure to arsenic on and in the CCA treated utility poles and cross-arms.

31. The acts and omissions of the chemical manufacturer Defendants, Arch, Osmose and CSI, in failing to put warning labels on the CCA treated utility

poles and cross-arms as described, *supra*, demonstrate a high degree of moral turpitude warranting the imposition of punitive damages.

WHEREFORE, Paul Stevens requests judgment against each of the Defendants for damages from bodily injury and rights arising from such injuries including, but not limited to:

    a.    Adverse health effects caused by Paul Stevens' exposure to the CCA on and in the CCA utility poles and cross arms;

    b.    Past, present and future:

        i.    Medical expenses;
        ii.    Lost income and earning capacity; and
        iii.    Physical pain and mental suffering suffered by Mr. Stevens.

    c.    Loss of body function suffered by Paul Stevens;

    d.    Punitive damages against the chemical manufacturer Defendants, Arch, Osmose and CSI;

    e.    Trial by jury of all claims properly so triable; and

    f.    All other just and proper relief in the premises.

Signed at Louisville, Kentucky this 18th day of May, 2012.

                      Respectfully submitted,

                      s/ *Richard L. Masters*
                      Richard L. Masters
                      Attorney for Plaintiff
                      MASTERS, MULLINS & ARRINGTON
                      1012 South Fourth Street
                      Louisville, Kentucky 40203
                      502.582.2900/502.587.0931 (fax)
                      lawsaver @aol.com